### CHAMPLIN & JONES *vs.* HAIGHT & HERRING.

Where an estate was devised to trustees in trust to receive the rents and income of the estate for the use of C. during her life, and to divide the estate among her children after her death, with an executory limitation over to the issue of such of the children of C. as should die before the time appointed for the distribution of the estate; with power to the trustees to sell the real estate and invest the proceeds, for the purposes of the trust, before the time appointed for a distribution of the same ; *Held*, that a sale of the estate, not for the purpose of investment, but with the avowed intention of distributing the proceeds between C. and her children, immediately, during the lifetime of C. would be a violation of the trust so far as regarded the interests of the issue of the children who might happen to die in the lifetime of C.

*Held further*, that a purchaser from such trustees, who had notice at the time of his purchase of the intended breach of trust, would not be protected against the equitable claims of such issue, if the proceeds of the sale should be thus misapplied.

Where an estate is devised in fee, in remainder, after the termination of a particular estate in the premises, with an executory limitation over to the issue of the devisee in case of the death of such devisee, such dying is to be construed to apply to the time when the remainder is limited to take effect in possession, and not to the time of the death of the testator ; and the term issue, in such a case, is a term of purchase and not of limitation.

The provisions of the revised statutes which declare that a person who pays money in good faith, to a trustee who is authorized to receive the same, shall not be responsible for the proper application of the money according to the trust, will not protect a purchaser who, at the time he purchases and pays the money to the trustee, has actual notice that the sale is not made for the objects of the trust, but with the intention of misapplying the proceeds of the sale in violation of such trust.

1843.

Champlin
v.
Haight.
May 2.

THE bill in this case was filed by the surviving and acting executors and trustees of Elizabeth De Peyster, deceased, for the specific performance of a contract, by the defendant Haight, for the purchase of two lots of land in the city of New-York, belonging to the estate of the decedent. The lots in question, together with other lots belonging to the estate of Mrs. De Peyster, were sold at auction by the complainants, in January, 1842 ; and the terms of the sale were, that ten per cent should be paid down, ten per cent on the first of May thereafter, when the deeds were to be given, and the residue to be secured by bond and mortgage, on a credit of five years, with semi-annual interest at the rate of seven per cent per annum. These two lots were struck off to the defendant Haight, the one for the price of $8,600 and the other for $7,950 ; and the terms and conditions of such sale were reduced to writing and signed by the agents of the complainants and of Haight, duly authorized for that purpose. Haight deposited the ten per cent upon the purchase money, in the trust company, subject to the order of the auctioneer, and took the receipt of the latter therefor, specifying that a good and sufficient title for the lots was to be given by the complainants, and that in case the title was not perfected by the first of May, 1842, the money was to be returned to Haight. The defendant Haight, being advised by his counsel that he would not obtain a perfect title to the premises under such sale, refused to complete the purchase. But he stated in his answer that he was still ready and willing and desirous, and he thereby offered to pay the residue of the purchase money, upon receiving a good and sufficient deed, and the possession of the lots, whereby he should obtain a perfect title to the lots and every part thereof.

The validity of the title to the lots in question, under the auction sale, depended upon the following facts, which appeared from the pleadings and proofs, or the admissions of the parties. Mrs. De Peyster died in 1821, seized of the two lots in question, and of other real estate in the city of New-York. By her will, which was executed in due form

of law to pass real estate, she devised a part of her free-hold property, in the will particularly specified, to her daughter, E. S. Champlin, for life, with remainder in fee to her children, or to the issue of such of her children as should have died leaving issue before the time appointed for the remainder in fee to vest in possession. The residue of her real estate, including the two lots in question in this cause, the testatrix devised to E. S. Champlin, W. G. Jones, J. Clark and E. Herring, her executrix and executors, and trustees, and the survivors and survivor of them, in fee, in trust and for the purposes of her will. She then directed them, or the survivors of them, to sell such residuary estate either at public or private sale, or to lease, mortgage, or otherwise dispose of the same, or any part thereof, as they should think advisable, and to vest the proceeds of the sales which they should make, in such securities as they should deem expedient; and after paying all just debts, funeral expenses, testamentary charges, taxes, assessments and other incidental expenses, they were further directed to give to her daughter, E. S. Champlin, the net income of such residuary estate, and of the proceeds of sales thereof, during her natural life; and if Mrs. Champlin should die before her youngest child had arrived at the age of twenty-one years, then to apply the rents and income to the maintenance and education of her children, until the youngest had attained that age. The testatrix, by her will, further directed her executors and trustees, or the survivors of them, immediately after the death of Mrs. Champlin, if her youngest child was then twenty-one years of age, or if not, as soon as such child should have attained that age, to divide such estate equally among all the children of Mrs. Champlin and Mrs. De Peyster, the two daughters of the testatrix, share and share alike. And she further directed that if any or either of the children of her said daughters should then be dead and leaving lawful issue, the issue should represent the parent, and take such share as the parent would have been entitled to if living.

Portions of the residuary estate were sold by the execu-

tors and trustees from time to time, and the proceeds there-
of invested as directed by the will of the testatrix, or ap-
plied to the payment of the debts.   In November, 1841,
eighteen lots remained unsold ; and Mrs. De Peyster being
dead and Mrs. Champlin being more than sixty years of
age, so that there was no probability of her having any
more children, and all her children but the youngest
having arrived at the age of twenty-one years, except one
who would be of that age in the course of two or three
months, an arrangement was made by all the children of
both of the daughters of the testatrix, except J. D. P.
Champlin, to purchase the life estate of Mrs. Champlin in
this residuary property, and to divide the property during
her life time ; and that the remaining lots should be sold for
that purpose, at public auction, in January, 1842, if they
should not have been sold at private sale, at certain specified
prices, before that time.   In pursuance of this arrangement
seventeen of the lots, which remained unsold, were adver-
tised to be sold at public auction, in January, 1842, and
were sold accordingly.   In the mean time, J. D. P. Cham-
plin, who refused to accede to the agreement to divide the
residuary property during the life of his mother, filed a bill
against the executors and trustees and obtained an injunc-
tion, restraining the giving of deeds by the executors and
trustees upon the sale ; of which injunction notice was
given at the time and place of sale.   But the bidders being
told that the injunction was obtained merely to embarrass
the sale and that a good title to the lots would be given,
and that the injuction would be dissolved as soon as an ap-
plication could be made to the vice chancellor for that pur-
pose, the sale proceeded.   The injunction obtained by J.
D. P. Champlin was afterwards dissolved, but his suit in
chancery to restrain the executors and trustees from divid-
ing the proceeds of the residuary property among the chil-
dren, during the lifetime of Mrs. Champlin, was still pending
when the bill in this cause was filed.

The assistant vice chancellor decided that the executors
and trustees could sell the property and give a good title

to the purchasers, under the power in trust to sell the property and invest the proceeds for the purposes of the will ; but that they had no right to distribute the residuary property, or the proceeds thereof, among the children of the two daughters of the testatrix, during the life of Mrs. Champlin. He therefore directed a specific performance of the purchase by the defendant Haight, upon condition that the executors and trustees should elect to convey the premises to Haight, and to have the twenty per cent of the purchase money paid to the clerk of the court, and the bond and mortgage for the residue executed to such clerk ; the clerk to be a trustee to invest the money and to pay over the interest thereof during the life of Mrs. Champlin, and to hold the principal in trust for the parties who might be entitled thereto, subject to the further order of the court. He further decided that the costs of both parties should be paid by the complainants, out of any funds of the estate of the testatrix in their hands to be administered ; and that if the complainants did not elect to convey the premises under the decree, within thirty days, their bill should be dismissed with costs. The defendant Haight appealed from the whole decree. And the complainants appealed from so much thereof as substituted the clerk as the trustee of the proceeds of the sale, instead of the executors and trustees of the testatrix ; and from so much thereof as allowed to the defendant Haight his costs, to be paid out of the trust fund in the hands of the complainants.

*H. W. Warner*, for the complainants. The complainants, as executors, have the power to convey the whole legal estate. The whole legal estate is in them ; not a mere power. And they are explicitly directed to sell. (1 *Ves. sen.* 485. 2 *Show.* 396. 16 *John.* 588. 8 *Cowen*, 277. 12 *Wen.* 602.) The defendant has nothing to do with the equitable interests and titles in the estate. The sale of the legal estate is subservient to such interests and to the trust by which they are secured. The defendant is not bound to see to the application of the purchase money. The shares

given by the will to the children of the two daughters of the testatrix are vested remainders, and were so on the death of the testatrix. (*Boraston's case*, 3 *Rep*. 20. *Brown* v. *Cutter*, 2 *Show*. 153. *Roake* v. *Newell*, 1 *Maule & Sel*. 327.) If one of the children dies and leaves issue before the period for division arrives, such issue will immediately take the dying parent's share. Even a present division of the estate may be prevented without taking the subject matter out of the hands of the executors. But the defendant has nothing to do with the question of present or future division, or in other words with the administration of the trust as to the proceeds. He wants a legal title and nothing more. To have raised an obligation on the part of the purchaser to see to the application of the purchase money, the power should either have been special in its terms, or so allied to ulterior objects, on its face, as to bring them into view, and thus to bear a special character by construction.

*J. W. Gerard*, for the defendant Haight. The executors cannot sell for the purpose of dividing the estate upon the youngest child coming of age, but must divide the lots in specie. Nothing can authorize a sale except a case of absolute necessity, for the support of Mrs. Champlin. If the executors can sell, the purpose for which they now sell is not the one for which they are authorized to sell by the will. (6 *John*. 72.) A devise in trust for the mere purpose of executing certain powers, gives no greater validity to a sale than if the executor had a mere naked power. In both cases the intention of the testator must govern ; and if the sale is not within the intention of the power, the purchaser with notice is no more protected under such a devise than he would be under a mere naked power. (3 *Hill*, 364–5.) The objection here is that the sale is in fraud of the power. It was not made for the benefit of the ultimate contingent remainders, but to defeat them. And the execution of the power being in fraud of the will, by dividing the estate and terminating the trust, instead of preserving it for those who may be ultimately entitled to the fee in remainder, the

1843.

Champlin
v.
Haight.

sale is void. The purchaser knows the character of the execution of the power, and he cannot therefore be protected as a bona fide purchaser. (25 *Wend.* 238. 3 *Cowen,* 651. 14 *John.* 517. 2 *Cowen,* 92.) The issue of the children of the testatrix have contingent remainders. (14 *Wend.* 310. 1 *R. S.* 718, § 13, 2d ed. 25 *Wend.* 238 *to* 241.) Purchasers are bound to inquire into the execution of the power. If not well executed, they acquire no title, especially where they have notice of the defect. (7 *Barn. & Cress.* 278. 1 *Mood. & Ryl.* 66. 2 *Litt. Rep.* 247, 115. 3 *Hill,* 262. 1 *Idem,* 111. 3 *Idem,* 361. 2 *Paige,* 205. 12 *John.* 343.) The revised statutes (1 *R. S.* 724, § 66, 2d ed.) do not apply. This is a case of an invalid execution of a power, by an abuse of the trust, to defeat the provisions of the will, of which the purchaser has notice. (2 *Paige,* 217.)

THE CHANCELLOR. It is perfectly evident, from the terms of the will of the testatrix, that the executors and trustees had no right to sell her residuary real estate for the purpose of dividing the proceeds thereof among the children of her two daughters, during the lifetime of Mrs. Champlin ; or for the purpose of raising a fund to pay a gross sum to Mrs. Champlin in lieu of her life estate in the residuary property, or in the proceeds thereof. As the testatrix died before the adoption of the revised statutes, the devise to the executors and trustees, with power to sell and invest the proceeds for the purposes of the will, is valid. But the equitable interests of the devisees, in the proceeds of the property, are the same as they would have been in the real estate itself if there had been a mere naked trust, without the power of sale. The power in trust to the executors and trustees, to sell the property, or any part of it, when they should think it adviseable to do so, was given for the purpose of enabling them to convert real estate into personalty, whenever they should deem it beneficial to the estate to make such a conversion for the purposes of the will ; and not for the purpose of distribution. For when the time

for distributing the capital of this residuary estate arrives, it will be the duty of the executors and trustees to divide the estate as it then exists; as the power to sell for the purpose of investment or otherwise will then have terminated. Whether this residuary property, therefore, continues to be real estate, or is converted into personalty, it is held in trust to pay the net rents and profits or income thereof to Mrs. Champlin for life, and then to divide the same among those who at that time shall be found to be entitled thereto by the terms of the will. The testatrix contemplated the possibility of the death of Mrs. Champlin while she had children under the age of twenty-one; in which event she intended to suspend the distribution of the property until after the youngest child should have arrived at that age. But she did not intend to have the division made as soon as the youngest child was of age, although the mother should then be living. None of the present children of either of the daughters of the testatrix may ever be entitled to the remainder in fee in this property, as they may all be dead before the time for distribution arrives. If those now in existence, therefore, should receive the proceeds of these sales, and should die before Mrs. Champlin, their issue who are in existence at her death, will have the right to call upon the executors and trustees to refund the amount thus distributed. And a purchaser of the premises who had purchased from the executors and trustees, with notice that they had agreed to sell for the purpose of making a distribution of the fund during the life of Mrs. Champlin, in violation of their trust, would not be protected against the equitable claims of such issue, although he had obtained the mere legal title to the premises, under the conveyance from the executors and trustees. Where there is a devise in fee in remainder, after the termination of a particular estate, with an executory limitation over to the issue of the devisee, in case of his death, such dying is to be construed to apply to the time when the remainder is limited to take effect in possession, and not to the time of the death of the testator. And the term issue, in such a case,

is a term of purchase and not of limitation. The issue in such cases therefore do not take as heirs of the devisee, so as to be bound by his acts, but as substituted devisees under he executory limitation over to them.

The revised statutes provide, that no person who shall actually and in good faith pay a sum of money to a trustee, which the trustee as such is authorized to receive, shall be responsible for the proper application of such money according to the trust ; nor shall any right or title derived by him from such trustee, in consideration of such payment, be impeached or called in question in consequence of any misapplication by the trustee of the monies paid. (1 *R. S.* 730, § 66.) And if the purchaser in this case had paid the money and taken his title, from all the executors and trustees who are now living, without any notice that the sale was made for the purpose of distributing the proceeds among the children, during the life of Mrs. Champlin, in violation of the trust, his title could not have been impeached. But as the next preceding section declares, in express terms, that where the trust appears in the instrument creating the estate, every sale, conveyance, or other act of the trustees in contravention of the trust shall be absolutely void, a purchaser could not be considered as having paid his money to these executors and trustees in good faith, when he had express notice, at the time of the sale, that such sale was not made for the purpose of investing the proceeds in conformity to the trust created in the will, but for the mere purpose of distributing the same during the life of Mrs. Champlin and in violation of the trust. For this reason I think the sale itself was illegal, because it was not made by the trustees for the purpose of carrying into effect the directions of the will ; and if the property should rise in value, that J. D. P. Champlin would have the right, as against this purchaser with notice, to insist that the sale was made in violation of the trust, and that the purchaser was a party to the illegal act of the trustees.

If all those who now are, or hereafter may be, interested in the proceeds of the trust property, were parties to this

suit, so as to be bound by the decree of the assistant vice chancellor, the disposition which he has made of the fund might perhaps protect the purchaser, even if the fund should by any accident be lost. But I am not aware of any principle which will authorize this court to substitute its officer for the trustee of the fund, so as to protect the purchaser from the future and contingent claims of the cestui que trusts who may not now be in existence, and over whom the court has no jurisdiction. I cannot therefore compel this purchaser to take a title, under this illegal and improper sale, which is liable to be impeached, not only by J. D. P. Champlin who protested against its validity, but also by the issue of such of the children as may happen to die before Mrs. Champlin.

The proper course for the executors and trustees, if they believe it is for the interest of the estate to sell these lots for the legitimate purpose of investing the proceeds for the purposes of the will, is to abandon the illegal agreement which one of them has made to sell the property and to take a gross sum out of the proceeds thereof for her life estate and to distribute the residue, and again to offer the property for sale under circumstances in which no such questions as are now presented will arise to prevent a fair competition among bidders at the sale. I presume no actual fraud was intended by any of the parties to the agreement of 1841, but they clearly mistook their rights under the will. That, however, will not authorize the court to compel the defendant Haight to invest his money upon a doubtful title, which must almost necessarily subject him to future litigation and expense in case any of the ten children, now living, should happen to die before the time appointed for a division of the trust property.

The decree appealed from must therefore be reversed, with costs to the defendant Haight, and the complainant's bill must be absolutely dismissed with costs.(a)

(a) This decree was reversed, upon appeal to the court for the correction of errors, in December, 1843.