(Decided 24th June, 1869.)

---

DRURY A. MIMS *vs.* THOMAS ARMSTRONG, ROBINSON W. CATOR, and others, trading as ARMSTRONG, CATOR & CO.

*Construction of Deeds—General words in a Deed restricted by Specific description in a Schedule annexed.*

A party being largely in debt, made a deed of assignment in trust for his creditors. In its recital, the deed stated the fact of his indebtedness, his inability to pay his debts in full, and his desire to provide for the payment thereof "as far as he could, in a just and equitable manner, by assignment of *all* his property and effects for that purpose." And in the granting clause, the property was described as "all and singular

his goods, chattels, promissory notes, debts, wares, merchandise, securities, and vouchers for, and affecting the payment of money, claims, demands, *choses in action,* and property of every name and nature whatever, of and belonging to him, *and which are more particularly and fully enumerated in the schedule thereto annexed, marked* Schedule A." After making this deed, the assignor left the State, was pursued and overtaken by an agent of the appellees (creditors of the assignor), and compelled to surrender to him a sum of money sufficient to discharge their claim. This sum was handed over by the agent to his principals. The money thus recovered was not embraced in the Schedule A, annexed to the deed of assignment. On an action brought by the trustee under the deed of assignment against the appellees, to recover, as belonging to the trust estate, the money so received by them, HELD:

1st. That the right to this money did not pass to the trustee under the deed.

2d. That the general words contained in the deed were restrained and limited by the reference to the Schedule A, which did not embrace said money.

APPEAL from the Superior Court of Baltimore City.

This was an action brought by the appellant, as assignee, for the benefit of the creditors of George R. McNabb, against the appellees, Armstrong, Cator & Co., for money claimed to have been received by them to the use of the appellant, under the following circumstances:

On the 27th December, 1866, George R. McNabb, of Columbia, South Carolina, being heavily indebted to a number of Baltimore merchants, whom he was unable to pay, made a deed of trust to the appellant for the benefit of his creditors. Annexed to the deed, and forming a part of it, was a schedule in which was "more particularly and fully enumerated" the property intended to be conveyed. All the property and money enumerated in this schedule was received by the appellant, who, under an arrangement with a committee of the creditors of McNabb, sent it to Baltimore, where the goods were sold, and the proceeds of sale, together with the cash mentioned in the schedule, were distributed amongst the creditors, including the appellees, yielding a dividend of 16⅔ per cent. McNabb,

after the execution of the deed, left Columbia and went to Tennessee, and thence to San Antonio, Texas. On his way he met, on the 29th of December, 1866, at Atlanta, Georgia, with John W. Walker, a travelling salesman for Messrs. Hodges Bros., of Baltimore, who were amongst his largest creditors, and informed him of his failure, and that he had given up everything to his creditors.

Subsequently, Walker, acting under instructions from his principals, and at the request of Mr. Walters, one of the appellees, followed McNabb, and on the 12th of February, 1867, found him at San Antonio in a gambling house, and compelled him to surrender $8,652.35, found in his possession, being the aggregate amount due by McNabb to Messrs. Hodges Bros., R. Hough & Sons, F. B. Loney & Co., and the appellees, Armstrong, Cator & Co., and $300 for his (Walker's) expenses in following him. With this sum he returned to Baltimore, where the money was paid over to the four firms above named, for whom it had been collected by Walker. Immediately upon the receipt by the appellees of their whole debt of $1,486.32, they returned, on the 23d February, 1867, to the committee of the creditors, the dividend of 16⅔ per cent., which they had previously received.

This suit was brought to recover from the appellees the money so received by them, on the ground that it formed part of the assets assigned by the deed of trust.

At the trial below, four bills of exceptions were taken by the plaintiff, the first three of which related to the admissibility of evidence, and need not be noticed, as they were not passed upon by this Court.

The fourth exception was taken to the rejection of the plaintiff's prayer, and the granting of the defendants' prayer. The character of these prayers is stated in the opinion of this Court.

The verdict and judgment being against the plaintiff, he appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON and ALVEY, J.

*Robert A. Dobbin* and *George Wm. Brown*, for the appellant:

The main inquiry in this case is, under the plaintiff's prayer, which was refused, and the defendants' prayer, which was granted, whether the general terms in the other parts of the deed are to be narrowed by the reference in the granting part to the Schedule A, and are to be construed to convey only the specific debts, goods, and chattels enumerated in the schedule. In construing a deed, it is the duty of the Court to ascertain what the parties intended should be effected by it, and then to give such an interpretation as will effectuate that intention, provided its terms and expressions will admit of such a construction. *Budd vs. Brooke*, 3 *Gill*, 234. And it is sufficiently apparent, from the terms of this deed, that it was the intention of the grantor to convey *all* his property for the payment of *all* his creditors.

The deed provides for the payment in priority of such creditors as shall, within forty days, execute releases, which provision, under the laws of Maryland and South Carolina, would render the deed void if it should be construed to convey only the property mentioned in the schedule, and not all his property. *Budd vs. Brooke*, 3 *Gill*, 234; *Spessard vs. Rohrer*, 9 *Gill*, 261; *Malcolm, Trustee of Sprigg & Meseke vs. Hodges*, 8 *Md.*, 425; *Green & Trammell vs. Trieber*, 3 *Md.*, 11; *Farquharson vs. Eichelberger, et al., Garn. of Muncks*, 15 *Md.*, 63; *Rosenberg vs. Moore*, 11 *Md.*, 381.

Provisions in a deed of assignment are to be construed in favor of its validity, where, upon their face, they are capable of two constructions, one of which would render the instrument valid, and the other invalid. *Martin vs. Kearney*, 10 *Wis.*, 443.

If the true construction of the deed be that the money in the possession of McNabb was not included in the deed of assignment, it was omitted through fraud, and is therefore to be considered as if included in the deed, at least as to all the creditors who assented thereto. *United States vs. Langton,* 5 *Mason,* 280 ; *Richards & Whiting vs. White,* 7 *Minn.,* 345 ; *Lemay vs. Bibeau,* 2 *Minn.,* 291 ; *Bishop, Smith & Co. vs. Trustees of Hart,* 28 *Verm.,* 71 ; *Merrill, et al. vs. Englesby,* 28 *Verm.,* 150 ; *Middleton vs. Lord Onslow,* 1 *P. Wms.,* 768 ; *Child vs. Danbridge,* 2 *Verm.,* 71 ; *Sadler & Jackson, ex parte,* 15 *Vesey, Jr.,* 52.

*Wm. Henry Norris* and *I. Nevett Steele,* for the appellees :

By the true construction of the deed of trust, nothing passed to the appellant but the property specifically enumerated in the schedule, and therefore the defendants' prayer, which asserted this view, was properly granted. *Burrill on Assignments,* ch. 19, p. 265 ; *United States vs. Howland,* 4 *Wheaton,* 108 ; *United States vs. Langton,* 5 *Mason,* 280 ; *Barnitz vs. Rice, et al.,* 14 *Md.,* 30 ; *Wilkes vs. Ferris,* 5 *John.,* 335, 344 ; *Moir vs. Brown,* 14 *Barbour,* 39 ; *Keep vs. Sanderson,* 2 *Wisconsin,* 60–61 ; *Rundlett vs. Dole,* 10 *New Hamp.,* 458 ; *Beard vs. Kimball,* 11 *New Hamp.,* 471 ; *Driscoll vs. Fiske,* 21 *Pick.,* 503 ; *Wood vs. Rowcliffe,* 5 *Eng. L. & Eq.,* 471 ; *Guerin vs. Hunt,* 6 *Minnesota,* 375 ; 3 *Washburne on Real Prop.,* 346–7 ; *Starkie on Ev.,* (by *Sharswood,*) 689–92, marg.; *Law Reps.,* 1 *Exchq.,* 48, 331, 333.

ALVEY, J., delivered the opinion of the Court.

This is an action for money had and received, instituted by the appellant against the appellees to recover money received by the latter in payment of a debt due them, alleged to have been assigned to the former by previous assignment of the debtor.

At the trial there were four bills of exception taken by

the appellant; but if the rulings of the Court below on the prayers be sustained, it will be unnecessary to decide the questions raised by the first three exceptions.

There were two prayers offered for instruction to the jury ; one on the part of the plaintiff, and the other on the part of the defendants. That offered by the plaintiff was refused, and the one by the defendants was granted.

The prayer of the plaintiff, which was refused, asked the Court to instruct the jury, that if they found the fact of the execution of the deed of assignment, given in evidence, and that the defendants were creditors of McNabb, the assignor at the time of the execution of such assignment, and that Walker, the witness, obtained from McNabb certain money, as stated by him in his evidence, and out of such money paid to the defendants the entire debt which McNabb owed to them ; and that the money which Walker so obtained from McNabb, belonged to McNabb, or was the proceeds of property which belonged to him at the time when he executed the deed of assignment ; then such money, by virtue of such deed, passed to the plaintiff, and he is entitled to recover from the defendants the amount which they so received from Walker, less the amount which they have paid to the plaintiff, with interest.

By the granting of the defendants' prayer, the Court instructed the jury, that by the deed offered in evidence, nothing was conveyed to the plaintiff by McNabb, except property enumerated in the schedule annexed thereto ; and if the jury believed that all such property was received by the plaintiff, and that no part thereof, or its proceeds, was in the possession of the defendants when this suit was brought, then their verdict should be for the defendants.

The deed referred to was an assignment by McNabb, a defaulting debtor to the plaintiff, as trustee, for the benefit of creditors ; and the first and most material question

is, whether the money alleged to have been received by the defendants, subsequent to the making of the deed, in discharge of their prior claims against McNabb, was part of the property conveyed by the deed of assignment to the plaintiff; for, if not, there is no color of right in the plaintiff to maintain the action, and it would follow necessarily that the Court was right in rejecting the prayer of the plaintiff, and in granting that of the defendants.

The deed, in its recital, states that McNabb, the assignor, " is indebted to divers persons in divers sums of money, which, by reason of sundry losses and misfortunes, he has become unable to pay in full, and is desirous of providing for the payment thereof, as far as he can, in a just and equitable manner, by assignment of *all* his property and effects for that purpose." And, in the granting clause, the property is described as " all and singular his goods, chattels, promissory notes, debts, wares, merchandise, securities, and vouchers, for and affecting the payment of money, claims, demands, *choses in action*, and property of every name and nature whatever, of and belonging to him, *and which are more particularly and fully enumerated in the schedule hereto annexed, marked Schedule A.* To have and to hold," &c.

The schedule referred to is annexed to the deed, and was signed, sealed, and delivered by McNabb, in the presence of witnesses, and with all the formalities of the deed, and was duly proved and admitted to record with the deed, of which it formed part, according to the law of South Carolina.

In this schedule, thus executed, the only money mentioned is the sum of $3,944.00, which is admitted by the plaintiff came into his hands; and it is conceded that the money, $8,352.35, obtained from McNabb by Walker, under the circumstances detailed in evidence, and out of which the defendants' claim was paid, is not embraced in the schedule. But it is contended that, notwithstanding

this sum of $8,352.35 was omitted from the schedule, yet it passed to the plaintiff under the general and comprehensive terms used in the granting clause of the assignment, and that the defendants have no right to retain the amount received by them in discharge of their claim against McNabb.

Did the right to this money pass to the plaintiff under the deed? We think, upon a proper construction of the instrument, it did not.

It is now settled, by all the authorities upon the subject, that a schedule, executed and referred to as in this case, forms part of the deed; and that being so, the well-established rule of interpretation is applicable, that where general words are followed by a special clause, the latter will restrain and limit their operation. It is a general rule, regarded as well established even before the time of Lord BACON, that where the instrument contains, in the first instance, a good and certain description of the thing granted, a subsequent mistake as to names, quantity, location, or some mere incident, will not be allowed to vitiate the grant. The subsequent mistaken description will be rejected upon the principle of *falsa demonstratio non nocet.* But where the subject of the grant is first described *generally*, and afterwards a particular description is added, that will, if it can be reconciled to what precedes it, restrain and limit the operation of the more general words of description. *Shep. Touch.*, 88; *Com. Dig.*, " *Parols*," (*A.* 7, 8.) Or, as the rule is stated by Lord ELLENBOROUGH, in *Conolly vs. Vernon*, 5 *East*, 78, " A circumstance *mistaken and false* will not frustrate *the grant of particulars sufficiently once ascertained.* But here (in that case) the words first used are *general* words, not descriptive of particular things; and, according to Lord HARDWICKE, in *Gascoigne vs. Barker*, 3 *Atk.*, 9, ' Where a man does not make a certain definitive description, it is very difficult for courts of justice not to construe subsequent restrictive

words as explanatory of the former.' And this distinction is to be found in *Dyer*, 50, *b*," says Lord ELLENBOROUGH.

In the grant before us the general descriptive words employed would certainly be sufficient, in the absence of any restrictive clause, to pass all the debtor's property; but we must suppose that the grantor had a purpose in the more particular description which he thought proper to give in the schedule, and that that purpose was what he declares it to be, a more particular and full description of the property conveyed. To withhold this meaning from the words of reference to the schedule is to deny to them all import whatever; and that is justified by no rule of construction.

If, instead of referring to the schedule for a particular description of the property, the grantor had followed the general description with such words, as namely, that is to say, or, as follows, and set out in the body of the assignment itself the items enumerated in the schedule, there could hardly have been a doubt but that the preceding general words of description would have been restrained and confined to the subsequent enumeration. And if that be so, how does the fact that the schedule, instead of being incorporated in the body of the deed, is on a separate sheet of paper annexed thereto, change in any manner the application of the principle? For the schedule being part of the deed, we should read it as if inserted in the body of that instrument. And, having reference to the actual intent of the grantor, as a sum of money was among the things enumerated in the schedule, though not the money sued for, it would be difficult to conclude, especially if we consider the conduct of the party, that he had any design of passing to his assignee any other money than that mentioned.

In support of the construction which we place upon the instrument before us, in addition to the authorities cited, we deem it proper to refer briefly to a few of the many

decided cases where schedules, as in this case, have been referred to, and made to control the more general words of description in the granting clause of the deed.

In the case of *Wood vs. Rowcliffe,* 5 *Eng. L. & Eq. Rep.,* 471, a bill of sale purported to assign to G R "all the household goods and furniture of every kind and description whatsoever in the house No. 2 Meadow Place, more particularly mentioned and set forth in an inventory or schedule of even date, and given up to the said G R on the execution thereof." At the time of the execution of the bill of sale, one chair was delivered by the grantor to the grantee in the name of the whole of such goods and furniture; but the schedule did not specify all the goods and furniture in the house; and the Court of *Exchequer* held, after full argument in support of a different construction, that the bill of sale only operated as an assignment of the goods and furniture specified in the schedule.

In the case of *Wilkes vs. Ferris,* 5 *John. Rep.,* 335, a debtor by assignment for the benefit of creditors, assigned "*all* the goods, property, wares, merchandise, chattels, vessels, debts, sum and sums of money, claims, and demands, and effects, belonging to, and now due, and owing to the said H C, or to which, and in which, he has any right, property, claim, or demand, which said goods, wares, and merchandises hereby granted and sold, are particularly described and enumerated in the schedule A, signed by the said H C, and to these presents annexed." As the proper construction of that assignment, it was held, that the general words in the deed did not include property not contained in the schedule, to which reference was made; "for though the words in one place be general," said the Court, "yet the assignment immediately goes on to specify, by reference to the schedule annexed, the specific articles of property assigned; and it therefore could operate only upon the articles specified; for, as the Court said, in *Munro vs. Alaire,* 2 *Caine's,* 327, if a general clause be fol-

lowed by special words, which accord with the general clause, the deed shall be construed according to the special matter."

The case before us cannot, by any fair construction, be distinguished from the two cases just cited, of *Wood vs. Rowcliffe*, and *Wilkes vs. Ferris ;* and we think those cases were decided in accordance with settled rules of construction, from which it would be dangerous to depart.  The principle applied in those cases is fully recognized and applied in the cases of *Moire vs. Brown*, 14 *Barb.*, 39; *Driscoll vs. Fiske*, 21 *Pick.*, 503, and in a number of other cases, many of which are referred to in *Burrill on Assign.*, 266-7-8.

The case most relied on by the appellant's counsel, as supporting a contrary construction, is that of *Platt vs. Lott*, 17 *N. Y. Rep.*, 478, where it was held, that an assignment in trust, for the benefit of creditors, of all a debtor's property, which was therein stated to be "more fully and particularly enumerated and described in a schedule annexed," passed property not mentioned in the schedule.  But, upon examination of that case, the grounds upon which the judgment proceeded do not appear to be consistent with previous decisions.  It was conceded that the ordinary rule is as we have stated it; but, proceeding upon what was supposed to be the better evidence of the intent, the general and comprehensive words used in the grant, it was concluded that the office of the schedule, though made part of the deed, was only matter of convenience, and intended as a guide to the assignee, and, therefore, should not be allowed to qualify or limit the broader language previously used.  This suggestion, with reference to the purpose of the schedule, has been, apparently approved in some of the subsequent cases; but as such construction appears to us to be a manifest departure from an established rule of interpretation, we are not at liberty to adopt it.

It has been, however, insisted, that as the words of reference to the schedule are in parenthesis, they should not be allowed the restrictive force that they might otherwise have, as the sentence in which they occur would be complete without them. But whatever may be the office of a parenthesis in a grammatical point of view, in a legal instrument every word used is entitled to have its proper and ordinary meaning considered in the construction. And accordingly, in the case of *Gascoigne vs. Barker*, 3 *Atk.*, 9, before referred to, where it was contended that subsequent words used in a parenthesis might be rejected, Lord HARDWICKE, in delivering his judgment, said: "The first question is, whether the words in the parenthesis are to be taken as restrictive of the first words of the devise, and I can take them no otherwise." The words were certainly intended to have a meaning, and if so, we must attribute to them their ordinary signification. The words here used were not the less restrictive because they were placed in parenthesis.

As we are of opinion that the plaintiff acquired no right to the money sued for, under the deed of assignment, the judgment of the Court below, which was for the defendants, will be affirmed.

*Judgment affirmed.*

(Decided 24th June, 1869.)