# STANLEY LOGSDON et al.

## vs.

# THE BRAILER MINING COMPANY OF ALLEGANY COUNTY.

*Construction of Deed—Conveyance of Coal Veins—Removal of Cloud from Title—Limitations—Adverse Possession.*

It is a cardinal principle, in the construction of deeds, contracts, and wills, that the intention of the parties shall prevail unless it violates or infringes some established principle of law; and to ascertain this meaning and intent of the parties resort must be had to the whole deed that every word of it may take effect and none be rejected. p. 474

In the construction of deeds and contracts courts take into consideration the language employed, and the subject matter and the surrounding circumstances. p. 475

A deed conveying in terms all the veins and strata of coal, lying on or under certain described land, "which crop out, blossom or show themselves at any point in or on" said land "higher than" a certain residence, "provided that nothing herein contained shall" convey any coal veins or strata "which crop out, blossom or show themselves on any part of said property lower than, or any" coal veins or strata "lying below" said residence, *held* to vest title to all coal veins and strata, lying on or under said land, which blossomed or showed themselves above said residence, except such of said veins and strata as also cropped out or showed themselves below said residence, and excepting also the coal lying directly under said residence. pp. 475-478

Where title to veins and strata of coal underlying land has been severed from the title to the surface of the land by a conveyance of the former, the adverse and continuous possession of the surface is entirely consistent with the title of the grantee of the coal, and cannot ripen into title to the coal. p. 479

Where, as in this State, the rule prevails that a suit to remove a cloud on title can be brought only by plaintiffs having possession of the property, the statute of limitations has no application to such a suit. p. 479

Where a deed, under which defendant claimed, purported to convey certain veins and strata of coal which belonged to plaintiffs, defendant asserted a claim to the coal so purporting to be conveyed, said claim of defendant seriously embarrassed plaintiffs in disposing of their coal, and the bill alleged that the location of a building, formerly existing, on which the extent of plaintiffs' and defendant's ownership of the coal to some extent depended, was in dispute and that there were but few living witnesses who could testify as to such location, *held* that such deed, and the claim of defendant, constituted a cloud on plaintiffs' title, and that the latter were entitled to a decree declaring the location of the building referred to, and declaring the deed null and void in so far as it attempted to convey any interest, title or privileges which belonged to them.

pp. 479-483

*Decided June 25th, 1923.*

Appeal from the Circuit Court for Allegany County, In Equity (Doub, J.).

Bill by Stanley Logsdon and others against The Brailer Mining Company of Allegany County to remove a cloud from plaintiffs' title and for an injunction. From the decree rendered, plaintiffs appeal. Affirmed in part and reversed in part.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Urner, Stockbridge, and Offutt, JJ.

*George Henderson* and *A. Taylor Smith,* for the appellants.

*John G. Miller,* with whom was *Ferdinand Williams* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

In 1850 William L. Logsdon, hereinafter called William Logsdon, Sr., of Allegany County, Maryland, and his wife, by deed recorded among the Land Records of said county, conveyed the coal, seams and strata of coal on certain tracts, lots or parcels of land owned by him in said county to J. Washington Tyson. That part of the deed containing a description of the property conveyed, and with which we are concerned in this case, is as follows:

"*This Indenture,* made this twenty-fifth day of September, in the year of our Lord one thousand eight hundred and fifty:

"Between William Logsdon and Elizabeth, his wife, of Allegany County and State of Maryland, of the first part, and J. Washington Tyson, of Howard District, in said State, of the second part.  Witnesseth— That the said parties of the first part for and in consideration of the sum of eight hundred dollars current money of the United States of America to them in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt of which is hereby acknowledged and the said party of the second part, his heirs, executors, and administrators, forever released and discharged from the payment of the same, by these presents, have given, granted, bargained and sold, aliened, remised, released, conveyed and confirmed and by these presents do give, grant, bargain and sell, alien, remise, release, convey and confirm unto the said J. Washington Tyson, his heirs and assigns, all the coal and veins of coal, strata, and seams of coal, lying on, in and under the tracts and parcels of land hereinafter particularly mentioned and described which crop out, blossom or show themselves at any point in or on said tracts of land higher than and above the residence now occupied by said William Logsdon built on one of said tracts, all of which said tracts adjoin each other, lying, being and

situate in the county and State aforesaid; and are
known and distinguished on the plat of said Allegany
County, and by name, as follows, to wit: All that
tract of land called 'Bear Camp,' and also all that
tract of land called 'Lost Pin,' and also all that tract
of land called 'Waterford,' and also lots numbers four
thousand and seventy-five (4075) and four thousand
and seventy-six (4076), and also part of lot numbers
three thousand six hundred and seventy-one (3671)
which was sold and conveyed to said William Logsdon
by Thomas Perry, trustee appointed by Allegany
County Court as a court of equity to sell the real estate
in the proceedings in the case of Francis Logsdon and
Benedict Logsdon, complainants, against William
Logsdon, Raphael Logsdon and others defendants, men-
tioned; and also full ingress, egress and regress in and
upon said afore herein described property, rights of
way, for the purpose of getting to and at coal veins
and strata and full right and power to open, work
out and exhaust the said coal veins and strata on the
west side of said above described property; provided,
however, that nothing herein contained shall grant to
authorize or empower the said party of the second
part, his heirs and assigns, to enter on or use for the
purposes above stated the east side of said property,
regarding and considering all the aforesaid tracts as
forming together one body of land and one property.
And provided also that nothing herein contained shall
grant or convey to the said J. Washington Tyson, his
heirs or assigns, any coal veins, coal or coal strata
which crop out, blossom or show themselves on any
part of said property lower than, or any coal veins,
coal, or coal strata lying below the residence now
occupied by said Logsdon as aforesaid."

By deed dated October 5th, 1895, and recorded among the
Land Records of Allegany County, Judge A. Hunter Boyd,
as the executor of the last will and testament of William

Logsdon, Sr., conveyed to William R. Logsdon a part of the land mentioned in the said deed from William Logsdon, Sr., to J. Washington Tyson, called therein the William Logsdon farm, containing about one hundred and twenty-seven acres, and described in the deed as follows:

> "All that farm in Mt. Savage District, Allegany
> County, on the road leading from Mt. Savage to the
> John S. Combs farm, known as the William Logs-
> don farm, and occupied for many years and up to the
> time of his death by the late William Logsdon, Senior,
> said farm containing about one hundred and twenty-
> seven acres more or less and being all the property
> conveyed to the said William Logsdon by Thomas
> Perry, trustee, by deed dated September 24th, 1850,
> and recorded in Liber No. 6, folio 341, of the Land
> Records of Allegany County, Maryland (to which a
> reference is hereby made for a more particular de-
> scription of said land). Excepting, however, from the
> operation of this conveyance all such portions of said
> land as were conveyed away in his lifetime by the
> said William Logsdon, Senior, by deeds of record
> among the Land Records of Allegany County afore-
> said," etc.

In 1916 William R. Logsdon conveyed the farm mentioned in the deed to him from Judge Boyd to Anthony L. Logsdon and Rosalie E. Logsdon, his wife, but excepted from the operation of the deed "all the coal under the property" thereby conveyed, which interest reserved in said farm, or the coal under said property belonging to William R. Logsdon, passed under the residuary clause of his last will and testament, admitted to probate in November, 1918, to his four children, Emma C. Henckel, Stanley Logsdon, Augustine Logsdon and Anthony L. Logsdon, and on the 6th of May, 1920, the said Emma C. Henckel conveyed all her interest in said property to the said Stanley Logsdon.

David J. Lewis and DeWarren H. Reynolds, trustees, by deed dated the 7th of November, 1902, and recorded among the Land Records of Allegany County, which recites that they had been appointed trustees by the Circuit Court for Allegany County "with power and authority to sell the veins and seams of coal and strata of coal and other minerals underlying 'the Home Farm of the late Augustine Brailer, Sr.,' and also all the veins and seams of coal and strata of coal underlying the lands commonly known as 'The Logsdon Lands,' " conveyed to George C. Brailer, trustee, the veins, seams and strata of coal underlying all the land referred to as "The Logsdon Lands" in the terms hereinafter stated.

On the 2nd of March, 1921, the said Stanley Logsdon, Augustine Logsdon, Anthony L. Logsdon and Rosalie F. Logsdon, his wife, filed a bill of complaint in the Circuit Court for Allegany County against The Brailer Mining Company of Allegany County, alleging that they, the plaintiffs, were the owners and in possession of the farm or parcel of land which was conveyed by Judge Boyd as the executor of William Logsdon, Sr., to William R. Logsdon, now known as the "Lower Farm" and included in the yellow lines on the plat filed with the bill as "Plaintiffs' First Exhibit, Map," and that they were also the owners and in possession of the coal and other minerals under said farm or land; that the defendant, the Brailer Mining Company of Allegany County, "was vested with the title to certain coal underlying part of the original William Logsdon, Sr., tract by virtue" of the deed we have mentioned from Lewis and Reynolds, trustees, filed with the bill, and that the terms of said grant are as hereinafter stated; that said deed was intended to convey "the same mineral rights in the original undivided William Logsdon, Sr.," land that were conveyed by the said William Logsdon, Sr., to J. Washington Tyson by the deed of September 25th, 1850, to which we have already referred, and a copy of which was filed with the bill; that the defendant, by virtue of said deed and a deed from Peter Logsdon and

wife, dated March 13, 1913, a copy of which was filed with
the bill, "became vested with title to the surface of and to the
minerals under all that tract within the red lines on said
map" marked "Plaintiffs' First Exhibit, Map"; that the
defendant never acquired by virtue of said deed, "nor in any
other manner," any right in the land lying south of the yel-
low line A-B-C-D-E on said plat or any right "to the coal and
other minerals thereunder," but that, "nevertheless," the de-
fendant claims that it owns the minerals under said land of
the plaintiffs, and has caused a plat to be prepared by a civil
engineer showing that it claims the minerals under plain-
tiff's farm or land; that the plaintiffs have no definite knowl-
edge of the grounds upon which the defendant makes said
claim, but that they are advised that the defendant claims
that by virtue of said deed from Lewis and Reynolds, trus-
tees, it is entitled to the coal under "all the lands" described
therein, "and not merely to the veins which crop out above
the William Logsdon residence (the correct location of which
is shown on said map as 'Old House')," and that it also claims
that the William Logsdon, Sr., residence was further south
than its real location, and that it is the one shown on said
map as the 'Stone House'; that the exact location of the resi-
dence of William Logsdon, Sr., in 1850 is material and
should be determined in this case, and that there are only
a few aged and infirm witnesses now living who remember
where it stood and who can testify to the location as that
shown on said plat, plaintiffs' exhibit, as the "Old House";
that the claim of the defendant casts a cloud on the plaintiffs'
title, and makes it impossible for them to sell or lease the coal
and other minerals underlying their farm marked on said
plat "Lower Farm," and that they are therefore entitled
to the aid of a court of equity to remove said cloud by a
judicial determination of the effect of said deed from Lewis
and Reynolds, trustees, and also to an injunction restraining
the defendant, its officers, etc., from claiming "any title or
interest in or to" said Lower Farm.

The prayers of the bill are (1) for a decree declaring "that by a proper construction of the deed from William Logsdon, Sr., to J. Washington Tyson * * * and the other deeds in defendant's chain of title, the defendant has no title" to the coal and other minerals underlying the farm, marked on said plat as the "Lower Farm." (2) For an injunction restraining the defendants, its officers, etc., from claiming any title to or interest in said farm or the "coal or other minerals thereunder," and (3) for general relief.

In its answer the defendant denies that it is not entitled to the coal under the land south of the line A-B-C-D-E on plaintiffs' plat and marked "Lower Farm," and alleges that it owns the coal under "Waterford," "Lost Pin" and "Military Lots Nos. 4075, 4076 and 3671"; that it and those under whom it claims have always claimed title to "the coal and other minerals" under said land; that the residence of William Logsdon, Sr., is correctly located on the plat filed with its answer marked Exhibit No. 1; that the coal to which the plaintiffs claim title "is, in fact and law, the property of the defendant, and that all the coal, veins of coal, strata and seams of coal lying on, in and under the several tracts and parcels of land described in the deed from DeWarren. H. Reynolds, attorney to the Brailer Mining Company do, in fact, crop out, blossom or show themselves higher than and above the residence of William Logsdon referred to in the bill and the deed from William Logsdon and wife to J. Washington Tyson." The answer also denies that the defendant's claim to "said coal and minerals" is a cloud on the "pretended title of the plaintiffs," and alleges that "if the plaintiffs and those under whom they claim ever had any right to the relief prayed in the bill they have lost the same by reason of laches and limitations."

The pleadings and evidence in the case are not very satisfactory, but it sufficiently appears that both the plaintiffs and the defendant derived whatever interest they have in the land

included within the yellow lines on the plat filed with the bill as "Plaintiffs' First Exhibit, Map," and marked on said plat "Lower Farm," from William Logsdon, Sr.; that the title to and interest in said land or "Lower Farm" reserved by the said William Logsdon, Sr., in his deed to J. Washington Tyson are now vested in the plaintiffs, and that the defendant must have acquired whatever interest it has in the said land or farm from those claiming under J. Washington Tyson and the deed to him from William Logsdon, Sr., in 1850; that the plaintiffs, and those under whom they claim, have been in continuous and uninterrupted possession of said land or "Lower Farm" from the date of said deed to Tyson to the filing of the bill in this case; that neither the defendant nor those under whom it claims ever mined or attempted to mine any of the coal on or under said land or farm, and that the only possession of said coal or veins of coal they are shown to have had is such possession as was incident to the title acquired under said deed to J. Washington Tyson; that the location of the residence of William Logsdon, Sr., referred to in the deed to J. Washington Tyson, is above the level of, or "higher up the hill" than the land or farm claimed by the plaintiffs; that the correct location of said residence is that of the present David Brailer house, and shown on plaintiffs' said plat and marked "Old House," and that the defendant caused a plat to be prepared by a civil engineer of the land on and under which it claims title to the coal, and that said plat includes the land called "Lower Farm" of the plaintiffs.

The following plat is a copy of the plat filed with the bill and marked "Plaintiffs' First Exhibit, Map." The land included within the yellow lines thereon and marked "Lower Farm," is the property claimed by the plaintiffs. The location of the William Logsdon, Sr., residence, referred to in the deed to Tyson, is marked "Old House," and the land included within the red lines is the land acquired by the defendant by the deed from Peter Logsdon and wife in 1913.

Reporter's Note.—The "yellow lines," as referred to in the opinion, are indicated on the above plat by dotted lines, and those referred to as "red lines" are indicated by heavy lines.

A number of veins or strata of coal are referred to in the testimony, but it would not be possible to determine from the evidence in the case what veins of coal extending under the lower farm in question crop out or blossom on the land mentioned in the deed to Tyson above the William Logsdon, Sr., residence.   Nor does it appear from the evidence how the Brailers, referred to in the deed from Lewis and Reynolds, trustees, to George C. Brailer, trustee, acquired title to any of the coal or veins of coal conveyed by William Logsdon, Sr., to Tyson, or how the defendant company acquired the coal mentioned in said deed to George C. Brailer, trustee, but as the bill alleges that the defendant by virtue of said deed from Lewis and Reynolds, trustees, "is vested" with "the same mineral rights" in a part of the original undivided William Logsdon, Sr. land as were conveyed by said Logsdon to J. Washington Tyson, and further alleges that the defendant, by said deed and a deed to it in 1913 from Peter Logsdon and wife, a copy of which was filed with the bill, "became vested with the title to the surface of and to the minerals under all that tract" included within the red lines on the plat of which the above is a copy, we may assume for the purposes of this case that the defendant has title to all the coal, veins and strata of coal on or under the land described in the deed from Lewis and Reynolds, trustees, that were conveyed by William Logsdon, Sr., to Tyson.   The deed referred to in the defendant's answer as the deed from "DeWarren H. Reynolds," its attorney, was not offered in evidence, unless it is the deed we have mentioned from Lewis and Reynolds, trustees.

Upon the record in the case, the questions to be determined are (1) what veins of coal or strata of coal were conveyed by William Logsdon, Sr., to J. Washington Tyson by the deed of 1850, and (2) whether the deed mentioned from Lewis and Reynolds, trustees, to George C. Brailer, trustee, under which the defendant claims, and the acts of the defendant, cast a cloud on the plaintiffs' title to the land de-

scribed as the lower farm and the coal; veins and strata of coal thereon.

The learned court below, in the decree from which this appeal was taken, held that upon the proper construction of the deed from Logsdon, Sr., to Tyson, the defendant, as the "successor in title to J. Washington Tyson," was entitled to all the coal, veins of coal, strata and seams of coal under the land described in the Tyson deed which crop out, blossom or show themselves "at any point in or on said tracts of land higher than and above the place where stood the residence of William Logsdon, Sr., in 1850 (which location is now marked by David Brailer's house)," and that the plaintiffs were entitled "to all the coal, veins of coal, strata and seams of coal which underlie the Anthony Logsdon farm (called the "Lower Farm")which crop out, blossom or show themselves on any part of said property conveyed by the said William Logsdon to J. Washington Tyson below the said 'residence,' and not above the 'residence,' and all said coal veins under said property which do not crop out on said property described in the deed to Tyson," while the appellants insist that in the deed to Tyson, William Logsdon, Sr., reserved all the coal on or under the land described in said deed below his residence, and that therefore the defendant has no title to or interest in any of the coal on or under the lower farm.

1.   While we are unable to adopt the contention of the appellants, we cannot entirely concur in the view of the court below.   The rule followed in the construction of deeds is clearly stated in *Zittle vs. Weller,* 63 Md. 190, where the Court said: "It is a cardinal principle in the construction of deeds, contracts and wills that the intention of the parties shall prevail unless it violates or infringes some established principle of law.   *Hope vs. Hutchins,* 9 G. & J. 78.   To ascertain this meaning and intent of the parties resort must be had to the whole deed that every word of it may take effect and none be rejected.   This is a well established and ancient rule of construction.   1 *Sheppard's Touchstone,* 87." See

also *Waller* v. *Pollitt,* 104 Md. 172; *Brown* v. *Reeder,* 108 Md. 657; *Marden* v. *Leimbach,* 115 Md. 210.    And in *Brown* v. *Reeder, supra,* the Court said: "In the construction of deeds and contracts courts take into consideration the language employed, and the subject-matter and surrounding circumstances." The deed from William Logsdon, Sr., to J. Washington Tyson names "Bear Camp," "Lost Pin," "Waterford," Lot No. 4075, Lot No. 4076 and a part of Lot No. 3671 as the several tracts and lots of land to be affected by the conveyance, and the subject of the grant was "all" of certain "coal and veins of coal, strata and seams of coal lying on, in and under" said "tracts" and "parcels" of land, and the right of "ingress, egress and regress in and upon" said several tracts and lots of land for the "purpose of getting to and at" said coal veins and strata, and to "open, work out and exhaust the said coal veins and strata on the west side" of said several tracts and lots of land. The evidence tends to show that the land described in the Tyson deed is located on the side of a mountain or hill called Bald Knob, and that lots Nos. 4075 and 4076 and the part of lot No. 3671 mentioned in said deed, and a part of the tract called Waterford, are lower than the William Logsdon, Sr., residence, and if we were to adopt the contention of the appellants we would be required to hold that none of the veins of coal on or under those lots or the part of Waterford lower than the residence passed under the Tyson deed, notwithstanding the express grant therein of certain of the coal, strata and seams of coal in and under all of said lots and tract of land. If the grantor in said deed had intended to limit the coal conveyed to the coal above the level of his residence he could easily have said so in plain terms, and there would have been no occasion to resort to a further description of the strata and veins of coal conveyed or of those reserved. But having determined to grant all the coal, strata and veins of coal on or under the said parcels of land that cropped out or blossomed thereon above or higher than his residence, and to retain and reserve

all of said coal, veins and strata of coal that blossomed or cropped out lower than said residence, the grantor realized that in order to protect his said residence it was necessary to make a further reservation of the coal *directly under* his house, and the concluding words of the sentence, "or any coal veins, coal, or coal strata lying below the residence now occupied by said Logsdon as aforesaid," upon which the appellants rely, were evidently employed to accomplish that purpose. This construction of the language quoted gives effect to all the words of the deed, and is in harmony with the intention of the parties expressed in the other parts thereof.

To the extent stated we concur in the conclusion reached by the learned court below, but we see no ground for limiting the title of the plaintiffs to the coal, veins and strata of coal underlying the lower farm which crop out, blossom or show themselves below the residence of William Logsdon, Sr., "and not above the residence." If the grantor had intended to grant all the veins and strata of coal that cropped out on the land described in the Tyson deed above his residence, regardless of whether or not any of said veins and strata of coal also cropped out or blossomed below said residence, there would have been no occasion to add that part of the clause of the deed describing the property conveyed which reserved the veins and strata which cropped out or blossomed below the residence, for Tyson could only have taken under the first part of the clause such veins and strata of coal as came fairly within its terms. The words, *"And provided also* that nothing herein contained shall grant or convey to the said J. Washington Tyson, his heirs or assigns, any coal veins, coal or coal strata which crop out, blossom or show themselves on any part of said property lower than" the residence of the grantor must therefore have been intended to accomplish some purpose not fully covered by the first part of the clause, and that purpose must have been to express the understanding of the parties that the veins and strata of coal which cropped out lower than the residence of the grantor were not

intended to be conveyed.    Any other construction of the deed would render the language we have just quoted meaningless, and fail to give effect to what the parties treated as an important part of the description of the property conveyed, or as said by Judge Alvey in *Mims* v. *Armstrong,* 31 Md. 95, to withhold this meaning from the words we have just quoted "is to deny to them all import whatever; and that is not justified by any rule of construction."    The reasoning of the Court in *Zittle* v. *Weller, supra,* seems particularly applicable to this feature of the present case, especially in view of the suggestion that "the proviso" should yield to the first part of the granting clause.    There the beginning of the granting clause of the deed stated that the grantors "by these presents do grant, bargain and sell unto * * * all their estate right and title * * * in and to the following described parcels of land," &c., and the clause ended with the statement: "It is understood by the parties herein mentioned that the interest herein conveyed is the two-thirds of the above described land."    In disposing of the contention of the appellees that the grantor acquired under said deed all the interests of the grantors, instead of two-thirds of the land described, the Court said:

"The rule that where there are two contradictory or repugnant clauses in a deed, the first clause shall prevail over the latter, has no application in this case, for this is not an instance of such repugnance.    The supposed contradiction is not between two clauses, but between parts of the same clause. It is between sentences in the granting clause describing the property conveyed.

"In the deed before us the descriptive words with which the granting clause starts out would be sufficient to carry all the interest of the grantors in the property, if there were no words added to indicate that less than the whole land, or less than all the grantor's interest therein was being granted; but there are words, and most material words, added to the description, restricting the estate conveyed to two-thirds of the

property described. If the description had been prefaced with this language, or if it had been stated that the parties 'granted, bargained and sold two-thirds interest in the following property' no controversy could have arisen. But because the language concludes the descriptive and granting clause it is claimed to be repugnant, and that it must be disregarded. As the intention of the parties is the primary object to be sought after, we do not see why language expressly declaring what that intention is shall be disregarded and pronounced null. If the language were at the end of the deed without any connection with the granting clause, there would be some ground for invoking the rule, that the first clause of the deed shall prevail over the latter. But here the description of the estate conveyed is closed with the express declaration of what the parties mutually understood as being bought and conveyed."

For the reasons stated we hold that, according to the true construction of the deed from Wm. Logsdon, Sr., to J. Washington Tyson, Tyson thereby acquired title to all the coal veins, coal, strata and seams of coal on or under the several tracts and lots of land therein mentioned which blossomed, cropped out or showed themselves on any part of said tracts and lots of land above and higher than the residence of said grantor, except such of said veins, strata and seams of coal as also cropped out, blossomed or showed themselves lower than said residence, and any coal, strata or seams of coal lying directly under said residence, and that the plaintiffs, as successors in title to William Logsdon, Sr., are entitled to all the coal, seams and strata of coal underlying their farm, called on the plat the "Lower Farm," which crop out, blossom or show themselves below the residence of William Logsdon, Sr., and also to all the veins of coal, etc., underlying their said farm, which do not crop out, blossom or show themselves on any part of the land described in said deed to Tyson.

The title to the coal, veins and strata of coal underlying the plaintiffs' farm which were conveyed by William Logsdon, Sr., to Tyson having been severed by said Logsdon from the title to the surface of said land or farm, the adverse and continuous possession of the plaintiffs of the surface of said farm, alleged in the bill and shown in the evidence, was entirely consistent with the title of Tyson, and those claiming under him, to the veins and strata of coal conveyed to him by the deed from William Logsdon, Sr., and could not ripen into title to such coal, veins and strata of coal (1 R. C. L., p. 738, sec. 57). Nor have the plaintiffs lost any right or title to the coal underlying their said farm by reason of laches or limitations. In this State a suit to remove a cloud on title can only be brought by plaintiffs having possession of the property (*Stewart* v. *May,* 111 Md. 162) and where that rule prevails the statute of limitations has no application to such a suit (*Cooper* v. *Rhea,* 29 L. R. A., N. S. 930, and notes to that case), and there is no evidence in the case to support the defense of laches.

2.   Assuming, as alleged in the bill, that the defendant, by virtue of the deed from Lewis and Reynolds, trustees, to George C. Brailer, trustee, has the title to the coal, veins and strata of coal underlying the plaintiffs' land, called the Lower Farm, that was conveyed by William Logsdon, Sr., to J. Washington Tyson in 1850, the remaining question to be determined is whether said deed from Lewis and Reynolds, trustees, and the acts of the defendant, cast a cloud on the title of the plaintiffs to the coal underlying their said farm entitling them to relief in equity. In considering this question, the important inquiry is whether said deed from Lewis and Reynolds, trustees, is an attempt or purports to convey any greater interest in the coal and veins of coal underlying said farm than was conveyed by the deed from Logsdon, Sr., to Tyson, and a glance at the granting clause of that deed is sufficient to indicate an affirmative answer to that question. As shown by the above copy of the plat, "Plain-

tiffs' First Exhibit, Map," and by other evidence in the
case, the plaintiffs' land, called the Lower Farm, consists of
parts of the tracts called Waterford and Lost Pin, and parts
of the lots No. 4075 and No. 4076, referred to in the Tyson
deed, and the granting clause of the deed from Lewis and
Reynolds, trustees, is as follows: "Second.  All the coal,
veins of coal, strata and seams of coal which crop out at
any point higher than and above the residence of and occu-
pied by William Logsdon, built on one of said tracts (in
1850), and lying in and under those tracts and parcels of
land known as 'Waterford,' 'Lost Pin,' Military Lots Nos.
four thousand and seventy-five (4,075), four thousand and
seventy-six (4,076), and a part of Military Lot No. three
thousand six hundred and seventy-one, which are included
in one set of outline, as follows, to wit:"  After a further
description, by metes and bounds, courses and distances, of
the above tracts and lots of land, the deed in another para-
graph contains the following: "Together with the rights,
ways, privileges and appurtenances under the same belong-
ing, and more particularly the right and privilege of enter-
ing in and upon the surface of said lands, for the purpose
of making convenient openings, with the object of prospect-
ing for said minerals and removing the same in the most ex-
peditious and practical manner, as followed in the mining
regions of Allegany County, and without causing any un-
necessary injury to the soil or surface of said lands."

The deed from Lewis and Reynolds, trustees, not only does
not limit the conveyance of the coal, strata and seams of
coal underlying the tracts or lots of land therein mentioned
to such of said veins and strata of coal as crop out, etc., on
the land described in the Tyson deed, but it is also an at-
tempt to convey all the coal, veins and strata of coal under-
lying said tracts and lots of land which crop out higher
than the William Logsdon, Sr., residence, regardless of
whether they also crop out lower than said residence, and it
is also an attempt to convey the right to enter upon *any part*

of said tracts and lots of land for the purposes therein stated, notwithstanding the deed to Tyson expressly limited the right to enter upon the land therein described for such purposes to the "east side" of said land, considering the several tracts and lots of land therein mentioned "as forming together one body of land and one property." The rights, title, interests and privileges in and to the several tracts and lots of land described in said deed from Lewis and Reynolds, trustees, attempted to be thereby conveyed are, therefore, clearly in excess of those acquired by J. Washington Tyson from Williams Logsdon, Sr., by the deed of 1850.

As we have said, the record shows that the defendant caused a map to be made by a civil engineer and exhibited, showing what it claims to be its "coal property"; that the land described on said map includes the farm of the plaintiffs known as the "Lower Farm"; that the defendant claims title to all the coal veins and strata of coal underlying said farm attempted to be conveyed by the deed from Lewis and Reynolds, trustees, and that said claim of the defendant seriously embarrasses the plaintiffs in disposing of the coal underlying their said farm, and the bill alleges that the exact location of the William Logsdon, Sr., residence was in dispute, and that there were only a few witnesses living who could testify as to its location. Under such circumstances there can be no doubt that the deed from Lewis and Reynolds, trustees, and the acts and claim of the defendant cast a cloud on the title of the plaintiffs to their farm and the coal underlying the same, and that they are entitled to the aid of a court of equity to remove that cloud. In the case of *Stewart* v. *May, supra,* where the deed obtained by the appellant and a mortgage executed by him, included a strip of the appellee's lot, about three feet wide, which had been built over by the tenant in possession of appellee's lot and the lot adjoining, and where the bill alleged that the appellant was claiming title to said strip of the appellee's land, and had by reason of his said

claim and his advice to the appellee's tenant prevented the appellee from securing a lease of his property, this Court, in affirming an order overruling a demurrer to the bill which prayed that the cloud cast on the appellee's title to said strip of land by said deed and mortgage and the claim and acts of the appellant be removed, said: "As the buildings have been so changed as to make the improvements on the appellee's and appellant's lots and the lot on the south 'practically one building,' it would probably be necessary, as the appellant is claiming title to the strip of land between the wall of his building and the wall of the building on the south, to offer evidence as to the identity or location of the monuments called for in the description of appellee's property in order to establish his title to the strip of land in question, and the rule, as stated in 6 Am. & Eng. Ency. of Law (2nd ed.) 157, is that: 'Where there is a defense in law and which rests upon evidence which may be lost by lapse of time or the imperfections of memory, the Court will entertain the litigation without waiting for the assertion of the claim." And the Court further said:

"Anything is a cloud which is calculated to cast doubt or suspicion on the title, or seriously to embarrass the owner, either in maintaining his rights or in disposing of the property (7 Cyc., 256), and we think that the deed and mortgage of 1907, and the acts of the appellant, are calculated to cast a doubt on appellee's title and to embarrass him in maintaining his rights, and that under the averments of his bill he is entitled to relief." In a later appeal in the same case, reported in 119 Md. 10, this Court affirmed the decree of the lower court, declaring the deed to the appellant, and the mortgage executed by him null and void so far as they attempted to convey title to said strip of the appellee's land, and declaring that the title to said strip of ground was in the appellee in fee simple.

In the case at bar we think the plaintiffs are entitled to a decree giving the deed from William Logsdon, Sr., to J.

Washington Tyson the construction we have stated, declaring
the location of the William Logsdon, Sr. residence to be that
shown on the plat filed with the bill, marked "Plaintiffs'
First Exhibit, Map," and indicated thereon by the words
"Old House," and declaring the deed from Lewis and Rey-
nolds, trustees, to George C. Brailer, trustee, null and void
in so far as it attempted to convey any other or greater in-
terests, title or privileges in or to the land or farm of the
plaintiffs, called the "Lower Farm" or in or to the coal, veins
and seams of coal underlying said farm than were conveyed
by William Logsdon, Sr., to J. Washington Tyson by the said
deed of 1850.   The decree of the court below must, there-
fore, be affirmed in part and reversed in part, and the cause
remanded in order that a decree may be passed in accordance
with this opinion.

> *Decree affirmed in part and reversed in part,
> and cause remanded in order that a de-
> cree may be passed in accordance with the
> opinion of this Court, the costs in this
> Court and in the Court below to be paid by
> the appellee.*