WEIPRECHT *v.* GILL ET AL.

[No. 19, October Term; 1948.]

480

*Decided November 11, 1948.*

*Petition for Clarification filed December 10, 1948.*

*Memorandum on Petition for Clarification filed January 12, 1949.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*T. Hammond Welsh, Jr.,* with whom was *Wilfred M. Dyer, Jr.,* on the brief, for the appellant.

*Nicholas Orem, Jr.,* with whom were *T. Howard Duckett* and *Duckett, Gill & Anderson* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

Fred J. Weiprecht, appellant, appealed to this Court from a final order ratifying the sale of certain real estate made by James W. Gill and H. Loy Anderson, Trustees, appellees here, and directing the distribution of the proceeds of that sale, over exceptions filed by the appellant.

The final order from which the appeal was taken not only ratified the sale but appointed a special auditor and directed him, after the allowance of certain expenses, to "allow whatever then remains of the purchase price to The Trust Company of New Jersey, a corporation, which was proven in said proceeding to be the sole owner of all fifty-three (53) notes described in said deed of trust."

At the hearing in this Court the appellant abandons his appeal from that part of the order ratifying the sale, but contests part of the order distributing the remainder of the purchase price.

On October 9, 1946, Williams Properties, Inc. executed to the appellees a deed of trust on a property located in Prince George's County, Maryland. The property described was a development divided into various lots. The deed of trust recited in part that "Williams Properties, Inc. is justly indebted unto The Trust Company of New Jersey, Jersey City, New Jersey, in the full sum of Two Hundred Sixty-five Thousand and no/100 dollars ($265,000.00), for which said sum Williams Properties, Inc. has made, executed and delivered unto the said The Trust Company of New Jersey, or order, their fifty-three (53) certain promissory notes of even date herewith, each of said notes being for the sum of Five Thousand and no/100 dollars ($5,000.00), and being numbered One (1) of Fifty-three (53) through Fifty-three (53) of Fifty-three (53), *exclusively and separately secured* on the property hereinafter mentioned," (all 53 lots), "all of said notes being payable on or before one (1) year after date, and bearing interest at the rate of five per centum (5%) per annum until paid, payable on the first day of each and every month after date until said indebtedness is paid; each installment of interest to bear

interest after maturity if not then paid at the rate afore-said, said notes *separately and exclusively secured* as follows: Note No. 1 of 53 secured on Lot 1, Gwynn Park Subdivision, per Plat Bk. No. 10, folio 75. Note No. 2 of 53 secured on Lot 2, Gwynn Park Subdivision, per Plat Bk. No. 10, folio 75." (Italics supplied here.) There then follows a similar listing of the remaining 51 notes, each numbered note secured by a particularly numbered lot, as above.

This deed of trust also contained the usual foreclosure clause, which in part recited: "The trustee * * * shall have the power, and it shall be their or his duty thereafter to sell, and in case of any default of any purchaser, to resell the said described land and premises at public auction, * * *". It also contained the provision that after first paying all costs the money received under the foreclosure was to be applied, "Secondly, to pay whatever may then remain unpaid of said notes, whether the same shall be due or not, * * *. Lastly, to pay the remainder of said proceeds, if any there be, to said Williams Properties, Inc.; its successors or assigns, * * *". On each deed of trust note the following appeared: "This is to certify that this is * * * the * * * promissory note * * * described in a certain deed of trust * * *".

Weiprecht, the appellant, filed a mechanic's lien in the amount of $1,981.59 against 17 lots on which dwellings had been erected and on which The Trust Company of New Jersey had made advances, and for which Williams Properties, Inc. had executed and delivered their 17 notes specifying those 17 lots as security. The appellant also filed mechanic's liens in the amount of $1,260.50 against 13 lots where the buildings were partially completed, and on which no advancements had been made by the note holder.

Williams Properties, Inc., being in bankruptcy, on June 19, 1947, the trustees in bankruptcy assented to an order granting leave to the appellees as trustees "forthwith to foreclose under the deeds of trust referred to

in said petition on all of the said real estate described therein".

The deed of trust being in default, the trustees foreclosed and sold all 53 lots for the sum of $17,500 to satisfy the debt secured, which, on October 6, 1947, the day of sale, was in a principal amount of $32,700. They first offered each of said 53 lots described in said deed of trust for sale individually and reserved the highest bid on each lot. The lots were next offered for sale in three groups. Group 1 comprised 17 lots on which improvements had been made and loans made under the deed of trust and notes issued. Group 2 comprised the 13 lots here in question on which improvements had been started but on which no loans had been made. Group 3 contained the unimproved lots on which no loans had been made.

It is stipulated and agreed "When the 53 lots described in the deed of trust mentioned in the above proceeding were offered for sale individually and separately by appellees at the foreclosure sale, no bid was received on any of the lots in Group 2, and no bid was received on any of the lots in Group 3 except Lot 25 for which the sum of $100 was bid. When said lots were offered by appellees in groups as set forth in the report of sale, no bid was received for Group 2 and no bid was received for Group 3. No bid was made by any person present at said sale for any of the above mentioned separate lots or groups with the one exception mentioned. The above facts were presented in evidence in the trial of this case in the lower court." The trustees then offered all the lots as an entirety and the bid of $17,500 was substantially more than the other offers. This bid was accepted and the sale reported. This selling price was $15,200 less than the actual amount advanced by the note holder under the deed of trust.

The appellant here treats his exceptions to the report of sale as a means of determining the priority of the deed of trust as against the mechanic's lien in the distribution of the remainder of the purchase price. In this Court

he abandons his objection to the ratification of the sale for the reason that he did not give an appeal bond to supercede the decree of sale. He also abandons all claim under the mechanic's lien to $1,981.59 aforesaid against the 17 lots on which loans have been made. However, he asserts his claim for $1,260.50 against the 13 lots on which no advances have been made by the note holder.

Appellees contend that the question now before us is moot because the chancellor fixed an appeal bond in this case and the appellant did not file that bond. On April 28, 1948, over a month having passed after the time fixed in the order for filing bond, the appellees, having received the balance of the purchase price, executed and delivered to the purchaser a trustee's deed conveying all 53 lots sold. As the purchase money for the property is still within the jurisdiction of the chancellor, we are of opinion that the question as to the priority of the deed of trust, as against the mechanic's lien in the distribution of the proceeds of sale, is not moot at this time.

Although the deed of trust in this case recites a consideration of $265,000, loans had been made on only 17 of the 53 Five Thousand ($5,000) Dollar notes.

The instrument here for interpretation evidently does not violate Chapter 923 of the Acts of 1945 in reference to a mortgage or deed of trust in the nature of a mortgage securing future advances, which repeals and reenacts Article 66, Section 2, of the 1939 Code, because this Act contains the words: "nor are the provisions hereof intended to apply to deeds of trust in the nature of mortgages or any other deeds of trust to secure bonds, notes or other obligations."

As pointed out in the case of *Logsdon v. Brailer Mining Company,* 143 Md. 463, at pages 474 and 475, 123 A. 113, in the construction of deeds and contracts the intention of the parties shall prevail unless such intention infringes some established principle of law. To ascertain this meaning and intent, we must look to the whole deed. In the construction of such an instrument the court should take into consideration the language employed, the sub-

ject matter, and surrounding circumstances. *Zittle v. Weller,* 63 Md. 190; *Brown v. Reeder,* 108 Md. 653, 657, 71 A. 417; *Marden v. Leimbach,* 115 Md. 206, 210, 80 A. 958; *Neavitt v. Lightner,* 155 Md. 365, 375, 142 A. 109; *Hammond v. Hammond,* 159 Md. 563, 566, 152 A. 107, 84 A. L. R. 1050; *Hodges v. Owings,* 178 Md. 300, 304, 13 A. 2d 338; *Richfield Oil Corporation of New York v. Chesapeake & Curtis Bay Railroad Co.,* 179 Md. 560, 569, 20 A. 2d 581.

Looking at the whole instrument to ascertain its meaning and intent and considering the language, subject matter, and surrounding circumstances, we are of opinion that the deed of trust here in question was not a lien upon the 13 lots here in dispute at the time of foreclosure. The instrument specifically states that the 53 notes are *exclusively and separately secured* and further that said notes are *separately and exclusively secured,* each note with a definite number on a particular lot with a definite number. No advancement had been made on the notes "exclusively and separately secured" by those 13 lots. No loan having been made on the particular lots in question, there was no liability under the deed of trust against those lots. The words "exclusively" and "separately" are not difficult to interpret. Definitions in Black's Law Dictionary follow: "Exclusively: Only, solely, purely, wholly; to the exclusion of other things." "Separate: Individual; distinct; particular; disconnected. Generally used in law as opposed to 'joint', though the more usual antithesis of the latter term is 'several'. Either of these words implies division, distribution, disconnection, or aloofness." It may be that one reason why each note was "separately and exclusively secured" on a particular lot was to aid an interested party in procuring the release of any one lot for $5,000. It is true there is express provision whereby the purchaser of a particular lot might have that lot released from the deed of trust upon payment of the note secured by that lot. But this particular reason for having each note separately and exclusively secured by a particular lot cannot alter the fact that they are "separately

and exclusively secured", and cannot narrow the plain meaning of these words to make them applicable *only* in the single circumstance of a partial release of the deed of trust.

As no loan had been made on the 13 lots here in question, we therefore deem it necessary to hold that the deed of trust here does not cover the 13 lots against which the appellant held a mechanic's lien of $1,260.50 at the time of foreclosure. Our decision here does not affect the validity of the sale, as there is no appeal bond superseding that part of the order ratifying the sale.

The question also arises in this case as to whether the charge of a watchman, hired to protect the property from marauders, was a proper charge, preferred to the mechanic's lien, on the 13 lots here in dispute. The only authority to the lender to employ a watchman is that contained in a supplemental agreement executed the same day as the deed of trust. This agreement states in part: "10. That the Lender may employ a watchman to protect said building and improvements from depredation and injury, and the cost thereof shall be deemed an advance under and secured by said note and deed of trust." From the testimony before us it does not appear that the buildings or improvements on the 13 lots here in question, had reached such a stage that a watchman was necessary and the watchman's charge against those 13 lots should not be allowed.

We will therefore remand the case to the chancellor to determine the selling price or value of these 13 lots sold, in proportion to the total sale price of $17,500 received for the entire 53 lots. This doubtless will be a difficult problem at this stage of the case, but there seems to be no other solution. The mechanic's lien, if established, is then to become a claim prior to the deed of trust against the then determined selling price of those 13 lots.

*Order affirmed in part and reversed in part, and cause remanded for further proceedings. Costs to be paid by appellees.*

ON PETITION FOR CLARIFICATION OF OPINION:

*Per Curiam.*

Appellees have filed, together with three letters from title companies, a petition for a "clarification", of two sentences in the opinion, which "will not in any way affect the decision * * * in this case, the conclusions reached, or the basis thereof", but is desired in order to allay fear that these two sentences "cast doubt upon a proposition of law heretofore universally accepted in Maryland," to wit, "that a deed of trust becomes a * * * lien on the property conveyed thereby at the time of the recording, prior to all other liens which may subsequently attach thereto". As appellees and the title companies disclaim any error in "the decision in this case, the conclusions reached, or the basis thereof", their fears necessarily imply that, by correct statements of the law as applied to the facts of this case, this court has cast doubt upon a proposition of law "heretofore universally accepted in Maryland" and not questioned, but actually applied, in this case, and may have overruled, without mentioning, many previous decisions, *e. g.*, the conclusion, arrived at after argument on two appeals and never since questioned, that the expression "subject only to the existing liens thereon" at the time of a conveyance by deed of trust should be construed "to include the entire lien of the [prior deed of trust in the nature of a] mortgage and the bonds issued and to be issued thereunder." *Orrick v. Fidelity & Deposit Co.*, 113 Md. 239, 248, 77 A. 599, 602, former appeal, *Diggs v. Fidelity & Deposit Co.*, 112 Md. 50, 82, 75 A. 517, 20 Ann. Cas. 1274. By the unusual language of the deed of trust in the instant case, the proposed indebtedness of $265,000, *i. e.*, 53 notes for $5000 each, was not all to be secured on all the 53 lots, but each note was to be "separately and exclusively secured" on one lot. Only $32,700 in the aggregate was actually advanced under the deed of trust, including advances in respect of only 17 of the 30 lots against which appellant filed mechanic's liens. By exceptions and by

appeal, appellant asserted, but in this court abandoned, his claim as against the 17 lots. No question was raised as to priority in date of work done by appellant and advances made under the deed of trust. $4800 was advanced on two of the 17 lots, by compromise at the insistence of the trustee in bankruptcy, six months after the mechanic's lien claims were filed. The only question of priority raised (and not abandoned) and decided was priority between a mechanic's lien and the non-existent lien of the deed of trust on 13 lots on which nothing was ever advanced and the deed of trust never became a lien at all.

The sentences of which "clarification" is asked are: "Looking at the whole instrument to ascertain its meaning and intent and considering the language, subject matter, and surrounding circumstances, we are of opinion that the deed of trust here in question was not a lien upon the 13 lots here in dispute at the time of foreclosure. * * * The mechanic's lien if established, is then to become a claim prior to the deed of trust against the then determined selling price of those 13 lots," pp. 485, 486, *supra,* 62 A. 2d 256. We think that the fears of appellees and the title companies are groundless and that statement of them is a sufficient answer to them.

This court endeavors not only to state correctly the law as applicable to the facts of a case, but also to avoid misleading statement which may unsettle settled law. Title companies, however, like litigants and lawyers, may not unreasonably be expected to indulge the presumption that a correct statement of law applicable to a case carries no lurking intention to unsettle questions long ago decided and not raised or to overrule a number of cases not mentioned. If we should undertake to render advisory opinions to allay far-fetched doubts and fears of title companies, such a practice, necessarily *ex parte,* would increase rather than diminish the risk of error on our part.