ADAMS ET AL. *v.* PARATER ET AL.

[No. 29, October Term, 1954.]

*Decided February 9, 1955.*

The cause was argued before Brune, C. J. and Dela-plaine, Collins, Henderson and Hammond, JJ.

*William B. Bowie* for the appellants.

*John W. Mitchell*, with whom was *George T. Burroughs* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appellants filed a bill of complaint against the appellees in the Circuit Court for Prince George's County, seeking an injunction to restrain the appellees from using certain property as a place where spirituous or malt liquors shall be made, sold or kept for sale. The appellees demurred to the bill and the Chancellor sustained the demurrer, without leave to amend, and dismissed the bill. This is an appeal from the order of the Chancellor.

Since the case is presented on demurrer, the facts stated in this opinion are based upon the allegations of the bill and an examination of exhibits filed with it.

The appellants and the appellee, Parater, are all owners of lots in a subdivision known as "Woodlane" in Prince George's County. It was laid out as a subdivision in or about the year 1940 by the then owner of the entire tract, one John W. Wood, and consisted of ninety-nine lots. A plat of "Woodlane" was duly filed by Wood and was recorded among the land records of the County. Each of the deeds from Wood to the appellants or their predecessors in title which are filed as exhibits to the bill of complaint describes the land thereby conveyed by lot number and by reference to the recorded plat. This is also true of the deed from Wood to the appellee, Parater, conveying lot No. 4, which is the lot in controversy.

The deed from Wood to Parater is dated November 23, 1940. The deeds from Wood to the appellants or their predecessors in title filed as exhibits all bear dates subsequent to the date of the Parater deed. Two are dated in December, 1940; others bear various dates from 1941 to 1947. No effort was made by Parater to use his property for the sale of beer prior to 1953,

though it appears that there had been a grocery store on his lot for some time before 1953.

Deeds to all but four of the ninety-nine lots in "Woodlane" contained a restriction against the use of the premises conveyed for the manufacture, sale or keeping for sale of spirituous or malt liquors.

Every one of the original deeds conveying lots in the subdivision from Woods to the several complainants or their predecessors in title contained six. restrictions which were stated "to run with the land" and which prohibited (1) the parking of trailers and the erection of temporary garages; (2) the sale or lease to, or occupancy by, any person not a member of the white race; (3) the making, sale or keeping for sale of spirituous or malt liquors; (4) nuisances; (5) building within 30 feet of street lines or side lines of lots; and (6) the erection of dwellings costing less than $2,500. The restrictions placed upon the Parater lot are not uniform with these, though restrictions (1), (2) and (5) of the Parater deed are identical in terms with restrictions (2), (3) and (5) respectively, contained in the deeds from Wood under which the complainants acquired their titles.

The deed of lot No. 4 from Wood to Parater contains the following provisions immediately after the granting clause:

"Subject to the following restrictions to run with the land:

(1) No sale to, lease to, or occupancy by anyone other than a member or members of the white race.

(2) No spirituous or malt liquors shall be made, sold or kept for sale upon said premises.

(3) No garage for commercial purposes shall be erected or permitted on said premises.

(4) Subject to the uses thereof for all legitimate commercial purposes.

(5) No building whatever shall be erected within 30 feet of the street line on the front line of said premises, nor within 30 feet of the side line of said premises."

On April 13, 1953, the defendant, Parater, as owner of the premises, and the corporate defendant and three persons who were officers thereof, acting as such officers and individually, filed an application with the Board of License Commissioners of Prince George's County for a license to sell beer on the premises. There were protests by owners of lots in Woodlane, but on September 17, 1953, the Board approved the application for the license. It filed an opinion stating that it was understood that in so doing it was not granting permission to the applicants to sell beer in violation of any contract or agreement which might be legally binding upon them, and leaving the determination of that question to the courts. Hence this suit. The appellants own the whole of 15 lots and parts of two others in Woodlane and have their homes on one or more of their respective lots. In addition, one of the appellants owns "numerous other lots in the subdivision."

The Chancellor stated in his opinion that other questions might be presented in the case, in addition to the construction of the deed from Wood to Parater, which he thus described: "whether the covenants in question run with the land and whether they are binding upon or for the benefit of assignees of the original owners, and whether the series of restrictions are so uniform and widespread as to constitute a plan or scheme of restriction which can be enforced by and against all owners in this area." The Chancellor found it unnecessary, however, to pass upon these questions, holding that "the case can be decided upon the construction of the restrictions contained in the defendant's deed." He thereupon proceeded to determine the case on that basis alone, and the only question presented on this appeal is the correctness of the construction of the deed. (Rule 9 of the Rules and Regulations Respecting Appeals adopted by this Court.)

Some question has been raised as to whether any evidence other than the deed itself may be considered in construing it. We think that there is no doubt that the

existence of a general plan of development may be shown and that the right of other property owners to enforce a covenant by which they are benefited may be shown by inference from sources outside the deed. *Levy v. Dundalk Co.,* 177 Md. 636, 11 A. 2d 476; *Schlicht v. Wengert,* 178 Md. 629, 15 A. 2d 911; *McKendrick v. Savings Bank of Baltimore,* 174 Md. 118, 197 A. 580; *Middleton Realty Co. v. Roland Park Civic League,* 197 Md. 87, 78 A. 2d 200. See also *Restatement, Property, Vol. V, Servitudes,* Chapter 46, Introductory Note, pages 3243-3244. It was said in *Schlicht v. Wengert, supra:* "In the absence of any expression in the conveyances that the restricting covenant was intended to enure to the benefit of vendees of other lots and sub-vendees of the developers, so as to be enforceable by them, it is incumbent upon a party seeking enforcement to show an unexpressed intention by inference from the nature of the plan and development, and the purpose of the restriction, or, in other words, from the circumstances. It would be incorrect to say that the absence of an expression of the intention is decisive. And it would be incorrect to say that any ground of valid inference must be disregarded. An inference which appears with sufficient clearness from any source should be accepted. To this one reservation should be made, however. It may be questioned whether present testimony by one of the developers as to his meaning and purpose in inserting the covenant in the conveyances is receivable in evidence to support or defeat the contentions of purchasers of lots." The allegations of the bill as to the existence of a general plan are, accordingly, to be considered as well pleaded and hence may be taken into consideration in passing upon the appellees' demurrer to the bill. The fact that a few lots are not subject to restrictions is not fatal to the existence of a general plan. *Schlicht v. Wengert, supra; Martin v. Weinberg,* 205 Md. 519, 525, 109 A. 2d 576, 578. It is not, however, necessary to rely upon the existence of a general plan if the promises can be implied from the deeds and sur-

rounding circumstances. *Martin v. Weinberg, supra,* and cases therein cited.

The appellants rely upon clause 2 of the restrictions in the deed from Wood to Parater as prohibiting the use of the premises for the sale of beer; and the appellees concede, as did the trial court, that its meaning, standing alone, is clear. The appellees contend, however, and the trial court sustained their contention, that clause 4 is repugnant to clause 2, that an ambiguity in the deed is thereby created and that this ambiguity must be resolved in favor of the free or unrestricted use of property. *Baltimore Butchers Abattoir & Live Stock Co., Inc. v. Union Rendering Co.* (sometimes referred to as *Live Stock Co. v. Rendering Co.*), 179 Md. 117, 17 A. 2d 130. In that case it is stated that "A restrictive covenant should not be extended by implication beyond its original intent to include anything not clearly expressed in the conveyance, and, if there is ambiguity in its meaning, any doubt should be resolved in favor of the unrestricted use of the property, if it reasonably can be done." Other comparatively recent cases recognizing the same rule include *Bartell v. Senger,* 160 Md. 685, 155 A. 174, *McKenrick v. Savings Bank of Baltimore,* 174 Md. 118, 197 A. 580, and *Matthews v. Kernwood,* 184 Md. 297, 40 A. 2d 522. Of course, before this rule can become applicable there must be an ambiguity. The same is true of the rule that an ambiguity in a deed should be resolved against the grantor.

Another and more fundamental rule, we think, is involved—that unless some positive rule of law is contravened, every part of a deed is to be given effect, if possible, and the intention of the parties must prevail. Among the many cases recognizing this rule are: *Georges Creek Coal & Iron Co.'s Lessee v. Detmold,* 1 Md. 225; *Reed v. Stouffer,* 56 Md. 236; *Brown v. Reeder,* 108 Md. 653, 71 A. 417; *Marden v. Liembach,* 115 Md. 206, 80 A. 958; *Logsdon v. Brailer Mining Co.,* 143 Md. 463, 123 A. 113; *Neavitt v. Lightner,* 155 Md. 365, 142 A. 109; *Weiprecht v. Gill,* 191 Md. 478, 62 A. 2d 253.

In *Martin v. Weinberg*, above cited, we held that the rule of strict construction in favor of the unrestricted use of property does not mean that the language of a deed must be so narrowly construed as to defeat its general purpose. This holding places this strict rule of construction in its proper relation to the more fundamental rule mentioned above which gives effect, whenever possible, to the intention of the parties. In *Martin v. Weinberg* it was contended that a prohibition against building or erecting on each lot more than one dwelling house, with necessary outbuildings incident thereto, "all of which said dwelling houses shall be used for residence purposes only" did not, in terms, forbid the use of an unimproved lot as a parking lot, and that under the rule of strict construction above referred to, the restriction would apply only when a building was constructed and that, until then, the lot might be used for any purpose. That contention was rejected and what was said in Judge Henderson's opinion in that case (speaking on behalf of a unanimous Court) is applicable here: "We have frequently stated and applied the rule of strict construction in favor of the unrestricted use of property. Cf. *Himmel v. Hendler*, 161 Md. 181, 155 A. 316; *Osborne v. Talbot*, 197 Md. 105, 78 A. 2d 205; and *Trunck v. Hack's Point Community Ass'n, supra*, [204 Md. 193, 103 A. 2d 343]. But this does not mean that language must be so narrowly construed as to defeat its general purpose. Literally, the words 'shall not build or erect * * * more than one dwelling house' do not refer to the land itself. But, obviously, a use of the land for 'open-air' parking or other commercial use, virtually unknown at the time the restrictions were drafted in 1914, would defeat the general purpose to limit the use of the dwellings contemplated, to residence purposes only."

The deed from Wood to Parater can hardly be considered a work of art. It is clear, however, that the grantor intended to impose restrictions, for the clause in question is introduced by the phrase: "SUBJECT to

the following restrictions to run with the land:" Then follow five numbered clauses, of which four (Nos. 1, 2, 3 and 5) are unquestionably restrictive. The appellees' contention would transform No. 4, which reads "Subject to the uses thereof for all legitimate commercial purposes" into a grant, not a restriction, despite the use of the words "subject to" both in the introductory clause applicable to all of the numbered clauses and in clause No. 4 itself. The correctness of this construction seems open to some question since the clause might be construed as a limitation of the uses to which the property might be put—as exlcuding commercial purposes which are not "legitimate" and possibly as impliedly excluding industrial purposes. Neither the appellants nor the appellees have suggested such a construction, and the appellants have apparently acquiesced in the construction of clause 4 as a grant, and differ with the appellees and with the view adopted by the Chancellor only as to the scope of the grant.

The effect of the construction placed upon clause 4 by the Chancellor is to nullify clause 2. It may be noted that this construction would be equally efficacious to nullify clause 3, though the latter result may be somewhat more striking because of the use of the term "commercial purposes" in both clause 3 and clause 4. The former prohibits the use of the premises for "a garage for commercial purposes." Such a use appears, however, no less a legitimate commercial purpose than does the use of the premises for the licensed sale of beer or hard liquor. Under the appellees' construction of the deed we are thus faced with the prohibition under clause 3 against an obviously legitimate use "for commercial purposes" being immediately struck down by the "grant" in clause 4 of the right to use the premises for "all legitimate commercial purposes."

A construction of one general clause which would at once nullify its two immediate, clear and specific predecessors should be avoided unless it is inescapable. We do not regard the construction which has been placed

on clause 4 by the appellees and by the Chancellor as inescapable. The latter was well aware of this problem for he said: "Admittedly it is difficult to explain why the draftsman of the deed should have inserted the paragraphs dealing with liquor and garages if it was his intention to permit the land to be used for all legitimate commercial purposes." Construing the deed as a whole, we think that the intention is clear that clause 4 was not meant to vitiate clauses 2 and 3, and should be construed as excluding from the general uses claimed to be authorized by clause 4 those uses which are clearly and specifically forbidden by clauses 2 and 3. This view is fortified by the doubt as to whether clause 4 is a grant or a restriction, though we do not think it necessary to resolve the doubt, and though our conclusion that clause 2 is not vitiated by clause 4 is arrived at on the assumption that clause 4 should be treated as a grant.

We think that although they are not on all fours with the instant case as to the facts, the reasoning of *Zittle v. Weller,* 63 Md. 190, *Mims v. Armstrong,* 31 Md. 87, and *Weiprecht v. Gill,* 191 Md. 478, 62 A. 2d 253, support our conclusion.

In *Zittle v. Weller,* the granting clause of a deed opened with the statement that the grantors "do grant, bargain and sell unto the said Jacob Weller, his heirs and assigns, all their estate, right, title and interest, trust property, claim and demand whatsoever at law and in equity * * * of, in and to the following destribed parts of tracts or parcels of land * * *." This was followed by a description of three tracts and a statement of their supposed acreage. Then followed this sentence: "It is understood by the parties herein mentioned that the interest herein conveyed is two-thirds of the above described land." The question at issue was whether the deed conveyed the whole interest in the property or only two-thirds thereof. In holding that only two-thirds were conveyed, the Court said (at page 197): "As the intention of the parties is the primary object to be sought after, we do not see why language expressly

declaring what that intention is shall be disregarded and pronounced null."

In the *Zittle* case the Court referred to and relied upon the case of *Mims v. Armstrong*, 31 Md. 87. In the *Mims* case, a debtor made an assignment for the benefit of his creditors which recited that he was indebted to various creditors in amounts which he could not pay in full and that he was desirous of providing for the payment of his debts, so far as he could, by assignment of *all* his property and effects for that purpose. (Emphasis supplied.) The granting clause described the property assigned as "all and singular his goods, chattels, promissory notes * * * *choses in action*, and property of every name and nature whatever, of and belonging to him, and *which are more particularly and fully enumerated in the schedule hereto annexed, * * *.*" The question was whether assets not enumerated in the schedule passed to the assignee, and the Court held that they did not. In an opinion by Judge Alvey, the Court said (at page 95): "In the grant before us the general descriptive words employed would certainly be sufficient, in the absence of any restrictive clause, to pass all the debtor's property; but we must suppose that the grantor had a purpose in the more particular description which he thought proper to give in the schedule, and that that purpose was what he declares it to be, a more particular and full description of the property conveyed. To withhold this meaning from the words of reference to the schedule is to deny to them all import whatever; and that is justified by no rule of construction."

In the *Zittle* and *Mims* cases general words happened to precede particular words, but we do not think that this alters the rule that all parts of the deed should be construed together.

In *Weiprecht v. Gill, supra,* there was a single deed of trust covering a tract of land which was subdivided into fifty-three lots. The deed of trust recited an aggregate indebtedness of $265,000, represented by fifty-three notes, each in the principal amount of $5,000, and each

of which, identified by number, was stated to be "exclusively and separately secured" by one of the lots, also identified by number. In fact, advances were made on only seventeen of the notes. The appellant filed a mechanic's lien against the seventeen lots on which advances had been made and on thirteen others on which no advances had been made. The holders of the notes were held entitled to priority of payment only out of the proceeds of sale of the seventeen lots on which advances had been made, and derived no benefit from the deed of trust as against the thirteen lots on which the appellant claimed a mechanic's lien. In other words, the generality of the deed of trust was held restricted by the particularity of the limitation contained in each of the notes and set forth in the deed of trust—that each note was secured by one lot and by one lot only. Here again the specific prevailed over the general and the intention of the parties as determined from the whole deed was given effect.

Returning to the two clauses of the Parater deed involved in this case, and reading them together, we think that, in the words of *Mims v. Armstrong, supra,* it would "deny * all import whatever" to clause 2 if clause 4 were held to be repugnant to it and thereby to nullify it, and that this would "be justified by no rule of construction."

If, however, we entertained doubts as to the proper construction of the deed and were forced to rely upon a technical rule of construction, we believe that the rule which, in case of repugnancy, gives effect to the first of two conflicting clauses in a deed, should be followed in this case. See *Marden v. Leimbach,* 115 Md. 206, 209, 80 A. 958, 959; *Link v. MacNabb,* 111 Md. 641, 74 A. 825; *Pritchett v. Jackson,* 103 Md. 696, 63 A. 965; *Marshall v. Safe Deposit Company,* 101 Md. 1, 60 A. 476; *Winter v. Gorsuch,* 51 Md. 180. The most frequent application of this rule is in cases where the granting clause is held to prevail over the habendum. A limitation of the rule has been recognized where the inconsistent provisions

occur in the same part of the deed (*Zittle v. Weller, supra*), and it might be contended that this limitation would be applicable here; and the rule is not one of inflexible application. (*Hammond v. Hammond.* 159 Md. 563, 152 A. 107). The reason for the rule suggested by *Tiffany, Real Property,* 3rd Ed., Sec. 979, seems clearly applicable and pertinent here—that it is "to prevent the revocation by implication, by a later clause, of an earlier provision made in clear, explicit and unambiguous words, such a revocation being required to be in terms no less clear and explicit than those of the earlier provision."

Being of the opinion that the construction of the deed by the trial court was erroneous, we shall reverse the order sustaining the appellees' demurrer and dismissing the bill and remand the case for further proceedings not inconsistent with this opinion.

*Order reversed and case remanded for further proceedings not inconsistent with this opinion, with costs of this appeal to the appellants.*